**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-60286
Summary Calendar
_____

CONNIE BROWN DERBIGNY,

Plaintiff - Appellant,

VERSUS

DAN GLICKMAN, Et al.,

Defendants,

DAN GLICKMAN,
Secretary, Department of Agriculture,

Defendant - Appellee.

_____

Appeal from the United States District Court
For the Southern District of Mississippi
(1:96-CV-180)
_____

December 31, 1997

Before DUHÉ, DeMOSS and DENNIS, Circuit Judges:

PER CURIAM:[1]

Appellant Connie Brown Derbigny ("Derbigny") appeals the district court's grant of summary judgment dismissing her Title VII employment discrimination claims. We affirm.

**BACKGROUND**

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Derbigny, a black female, obtained temporary employment at the National Monitoring and Residue Analysis Laboratory ("NMRA") in Gulfport, Mississippi, beginning in March, 1987. She was subsequently promoted to the permanent position of physical science technician. Derbigny resigned in August, 1989, to further her education. In March, 1990, she returned to the NMRA as a physical science technician, but this time as a temporary employee. Her sister, Deborah Brown ("Brown"), also began work at NMRA around that time. Because Derbigny continued to attend school, her work schedule was altered to accommodate her school schedule. Some time after Derbigny returned to NMRA, Brown began dating a white, male coworker, Darren Ladner, whom she later married.

On October 23, 1990, Derbigny received her annual performance review, which indicated a "fully successful" rating by her supervisor, Dorothy Ladner ("Ladner"), a white female. Derbigny refused to sign the evaluation form because she believed she should have been rated "exceeds" in light of previous comments by Ladner that she was doing outstanding work. For similar reasons, Brown also refused to sign her evaluation form. That same day, Derbigny and Brown met with Joseph Ford, a black male and second-level supervisor, to complain about their performance reviews. Although Ford attempted to explain the evaluations, the meeting grew heated and Ford terminated Brown for insubordination.

Following that incident, Derbigny's relationship with her supervisors and coworkers deteriorated. Over the next three

months, Derbigny filed a series of informal grievances with Ford, complaining, *inter alia*, about her evaluation and about warning letters from Ladner about her work performance.  Finally, during a dispute over Derbigny's use of the copying machine to copy her work folders, Derbigny apparently accused Ladner of lying.  Derbigny was subsequently terminated by Ford for insubordination on February 11, 1991.

On September 17, 1991, Derbigny filed an EEO charge of discrimination, alleging that she had been discriminated against in the workplace because of Ladner's disapproval of her sister's interracial marriage.  Her charge was denied on the merits in a final agency decision; that decision was upheld by the EEOC. Derbigny then filed suit in federal court under Title VII, 42 U.S.C. § 2000e *et seq.*

The district court granted the Secretary's motion to dismiss claims based on conduct occurring before January 12, 1991, for failure to exhaust administrative remedies.  See Pacheco v. Rice, 966 F.2d 904, 905 (5th Cir. 1992); 29 C.F.R. § 1613.214(a)(1)(i)(1991).  The court also granted the Secretary summary judgment on claims arising from conduct after January 12, 1991, because, even assuming Derbigny had established a *prima facie* case of employment discrimination, the Secretary provided legitimate, non-discriminatory reasons for the challenged actions. See Long v. Eastfield College, 88 F.3d 300, 308 (5th Cir. 1996), citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Derbigny now appeals.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. <u>Bodenheimer v. PPG Industries, Inc.</u>, 5 F.3d 955, 956 (5th Cir. 1993). Summary judgment shall be rendered if there is no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In making that determination, we must draw all justifiable inferences in favor of the nonmovant. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986). We need not address whether Derbigny failed to exhaust administrative remedies as to some of her claims, because we find that, even assuming Derbigny has stated a *prima facie* case[2] of racially motivated employment discrimination, the Secretary has advanced legitimate, non-discriminatory reasons for her termination. <u>See</u> <u>Long</u>, 88 F.3d at 304-05.

Title VII makes it unlawful for an employer "to discriminate against [] any individual because of his race ...." 42 U.S.C. § 2000e-2(a)(1). Once a plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to articulate

---

[2]A *prima facie* case of employment discrimination under Title VII requires the plaintiff to show: (1) she is within a protected group; (2) she was adversely affected by her employer's decision; (3) she was qualified to retain her position or otherwise be free of adverse employment decisions leading up to and including her termination; and, (4) "evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching its decision." <u>Woodhouse v. Magnolia Hospital</u>, 92 F.3d 248, 252 (5th Cir. 1996); <u>see</u> <u>Meinecke v. H&R Block of Houston</u>, 66 F.3d 77, 83 (5th Cir. 1995).

"reasons for its actions, which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not a cause of the employment action." Hicks, 509 U.S. at 507. If the defendant carries this burden of production, the plaintiff then must show that the proffered reason is pretextual. Id. at 508, citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). The plaintiff retains the ultimate burden of proving that he was the victim of intentional discrimination. Hicks, 509 U.S. at 508.

Although we have serious doubts whether Derbigny has established her *prima facie* case, we need not reach that issue. The record shows that Derbigny's supervisors had legitimate nondiscriminatory reasons for their actions[3] against Derbigny and were not motivated by racial animus. Derbigny fails to show that her "fully satisfactory" review was based on anything but legitimate, objective workplace standards. Furthermore, Ladner's written warnings to Derbigny appear justifiable, given Derbigny's improper absence from the NMRA compound, her uncooperative attitude, and her stubborn insistence on copying work folders in direct defiance of Ladner's orders. On the whole, the record shows

---

[3]We assume, as did the district court, that Derbigny's performance evaluation, the series of letters warning Derbigny about her work performance, and finally the termination itself all constitute "adverse employment actions" for purposes of Title VII. But see
Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995)(Title VII designed to address ultimate employment decisions and not every decision made by employers that might have some tangential effect on those ultimate decisions).

that, following her October evaluation, Derbigny became a disgruntled employee, whose unruly behavior resulted in her dismissal. Finally, the record further shows that Derbigny's supervisors made a good faith, but ultimately fruitless, effort to resolve Derbigny's problems.

In sum, we find that the Secretary articulated legitimate, non-discriminatory reasons for its actions against Derbigny. Furthermore, Derbigny has not pointed to any evidence in the record showing that the proffered reasons for her supervisors' actions were pretextual. Since there is no genuine issue as to whether the NMRA intentionally discriminated against Derbigny, the district court correctly granted the Secretary's motion for summary judgment.

AFFIRMED